GUILLERMO SALAZAR PALÁU, Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 7297. Argued November 17, 1937.—Decided July 30, 1938.

*Ramón Dapena* and *Felipe Colón Díaz* for appellant.   B. *Fernández García, Attorney General, V. Palés Matos* and *C. Andréu Ribas, Deputy Attorneys General,* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

In this case appellant filed suit in the District Court of Ponce to recover taxes paid under protest in the sum of $1,186.87.   The complaint narrated that on the 28th of July 1931, the plaintiff and the Commissioner of the Interior in his capacity as President of the Homestead Commission of Puerto Rico, entered into a contract by which Dr. Guillermo Salazar Paláu, plaintiff and appellant, bound himself to sell to the People of Puerto Rico for said Homestead Commission a farm situated in the Municipality of Orocovis, having an area of approximately 736 *cuerdas;* that by said contract the Homestead Commission agreed to buy said farm for the stipulated price of $57.75 per *cuerda.*

The said contract was made subject to the following conditions:

1. The approval by the Legislature of Puerto Rico of new legislation amending Act No. 9 of 1930 (Session Laws, p. 150) ; the emission of the bonds, once said legislation should be approved, and the delivery to the commission of the value of the same to be used by the latter in the purchase of farms.

2. Approval by the Attorney General of Puerto Rico of all the titles and documents whereby Dr. Salazar Paláu traced his title to said farm.

3. Survey of the property and approval of the plan by the Commissioner of the Interior.

In said contract the People of Puerto Rico was authorized to deduct from the purchase price any taxes which the vendor should owe on said property.

The conditions aforesaid were fulfilled as follows:

1. Act No. 9 of 1930, *supra,* was amended by Act No. 41 of April 24, 1931 (Session Laws, p. 362), which was later repealed by Act No. 4 of December 14, 1932 (Session Laws, p. 146).

2. The documents and title to the farm were approved by the Attorney General of Puerto Rico on May 9, 1932; and

3. The plan of the farm was approved by the Commissioner of the Interior on the 18th of May, 1933.

On July 28, 1933, the deed of sale of the property from Dr. Salazar Paláu to the People of Puerto Rico was executed.

From the agreed purchase price the People of Puerto Rico deducted the sum of $1,186.87 for taxes on said property for the fiscal years 1931–31, 1932–33, and 1933–34.

The appellant paid the $1,186.87 under protest, and brought action in the District Court of Ponce to recover said amount alleging that said property belonged to the People of Puerto Rico from and after July 28, 1931, and that therefore he did not have to pay such taxes. The District Court of Ponce found that the contract entered into between Dr. Salazar Paláu and the People of Puerto Rico was a unilateral contract, that is, a mere offer of sale, and that therefore title did not pass to the People of Puerto Rico until the date of the execution of the deed of sale, to wit, July 28, 1933.

Plaintiff alleges three errors in the district court:

1. In holding that the contract entered into by Dr. Salazar and the commission was a mere offer of sale on the part of Dr. Salazar, accepted by the commission.

2. In finding that the commission accepted an offer of sale made by Dr. Salazar, but did not enter into a contract of purchase and sale.

3. In finding that the commission did not acquire title to the property until July 28, 1933, the date of the execution of the deed of sale, and that according to the terms of said deed and of the offer of July 28, 1931, the Treasurer of Puerto Rico had the right to deduct any taxes owed by the plaintiff-appellant on said farm from the purchase price, up to the date of the sale, i. e. July 28, 1933.

It is perfectly clear that sometime between 1931 and 1932 the People of Puerto Rico placed a watchman on the property and the idea was that he should protect the property, but

in any event the watchman was no longer there after October 1932.

Likewise, it appears that sometime between 1931 and 1933, Dr. Salazar himself gathered a small crop of coffee from the property. The appellant insists that the contract was in fact consummated in 1931, although subject to conditions. The district court and the appellee say that the alleged agreement betwen the parties was only binding as a unilateral contract; in other words, that it was only Dr. Salazar who was really bound thereby.

We do not have to settle the question of whether the original agreement was unilateral or not, because we think the whole intention of the parties is made clear by section 3 of the original agreement, as follows:

"It is also agreed that once the documentation is approved the sellers will remit the plan of the property, the object of this contract, for its ratification, it being understood that if they have no original plan, the Commissioner of the Interior will proceed to the bounding and measurement of said *finca* for all of which the personnel of the Department shall be used, it being agreed that the cost of its ratification and survey shall be charged to the vendors, and the Commissioner of the Interior is authorized to deduct such costs from the price agreed upon, and the People of Puerto Rico is also authorized to retain from the amount of said price the taxes which may be owing by the present vendors."

The whole paragraph shows that the parties were looking ahead for some future period when the deduction for taxes should be made. The wording of the entire clause is in the future tense or its equivalent. We think the whole agreement shows that the intention of the parties was that the People of Puerto Rico should have the right of deducting these taxes when the sale was finally consummated, as it was on the 28th of July 1933. We have had some doubt largely because the People of Puerto Rico by placing a watchman on the premises acted as if it were already the full owner, but the People of Puerto Rico did not insist and the

presence of the watchman might have been a thing that was simply attempted by The People and tolerated by Dr. Salazar. It would not be extraordinary for The People to place a guard to watch the property with its purchase in prospect, even if it was not actually the owner.

If there had been no agreement about the taxes, Dr. Salazar would have been bound to pay them, and if it had been the idea of the parties that the taxes should not have been deducted, such intention should have been made plain.

The judgment appealed from should be affirmed.

Mr. Justice De. Jesús took no part in the decision of this case.